UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **ELVIN L. MIDDLETON,** | ) | Case No. **6:12-cv-00540-SI** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

Kathryn Tassinari and Drew L. Johnson, Drew L. Johnson, P.C., 1700 Valley River Drive, Eugene, Oregon 97401. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, Oregon 97204; Nancy A. Mishalanie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104.  Attorneys for Defendant.

**SIMON, District Judge.**

Elvin Middleton seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits. Because the Commissioner's decision was supported by substantial evidence, the decision is AFFIRMED.

# BACKGROUND

## I. The Application

Mr. Middleton was born in 1958. He obtained a GED and worked as a janitor, a computer technician, and a parts wirer. Tr. 27, 29, 40. He applied for Disability Insurance Benefits on February 19, 2009, alleging disability beginning February 28, 2007. Tr. 10. Mr. Middleton alleges disability due to osteoarthritis, fibromyalgia, essential tremor of the hands, a depressive disorder, and an anxiety disorder with panic attacks. The Commissioner denied Mr. Middleton's application initially and upon reconsideration. *Id.* An Administrative Law Judge ("ALJ") held a hearing on December 9, 2010. *Id.* In a decision issued January 21, 2011, the ALJ found Mr. Middleton to be not disabled. Tr. 18. Mr. Middleton's request for administrative review was denied by the Appeals Council on February 2, 2012, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Mr. Middleton now seeks judicial review of that decision.

## II. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## III.    The ALJ's Decision

At Step One, the ALJ found that Mr. Middleton has not engaged in substantial gainful activity since February 28, 2007, despite receiving $1,532 a month from his mother and the State of Oregon to care for his mother. Tr. 12. The ALJ also noted that Mr. Middleton's jewelry-making business, which he operated in 2008, grossed $1,160 but had no net income. *Id.*

At Step Two, the ALJ found that Mr. Middleton had multiple medically determinable impairments: osteoarthritis, fibromyalgia, essential tremor of the hands, a depressive disorder, and an anxiety disorder. *Id.* He did not find, however, that any of these impairments or any combination of these impairments significantly limited Mr. Middleton's ability to perform basic work-related activities for twelve consecutive months or longer. Tr. 13.

In determining that Mr. Middleton's impairments were not severe at Step Two, the ALJ discredited Mr. Middleton's testimony and found the lay testimony offered to be not persuasive. *See* Tr. 14-17. The ALJ gave significant weight to the medical opinions of four reviewing physicians, two regarding Mr. Middleton's physical conditions and two regarding his mental health, all of whom opined that Mr. Middleton has no severe impairment. *See* Tr. 16, 17-18. The ALJ found these opinions to be consistent with Mr. Middleton's self-reported daily activities and the objective medical evidence. *Id.* In contrast, the ALJ gave little weight to the opinions of a treating physician, Rachel Nosce, M.D., and an examining physician, Erik Stowell, M.D. Tr. 16-17. Based on his Step Two finding, the ALJ found that Mr. Middleton is not disabled.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

2006)) (internal quotations omitted). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*

## DISCUSSION

Mr. Middleton argues that the ALJ erroneously: (1) rejected his testimony; (2) rejected lay witness testimony; (3) found that his impairments are not "severe" at Step Two despite the contrary assessments of a treating and an examining physician; and (4) failed to develop the record regarding the extent of his mental and physical impairments. Mr. Middleton asks the Court to credit as true the medical opinions of Dr. Nosce and Dr. Stowell and to apply the vocational expert's testimony that those opinions, if accepted, would limit Mr. Middleton to sedentary work. Mr. Middleton further argues that under the Medical-Vocational Rules (also known as the "Grids"), such a limitation, at his age and given his background, would result in a finding of disability. Mr. Middleton thus requests that the Court remand the case for the immediate award of benefits. Because substantial evidence in the record supports the ALJ's determination on each of these four points, the Court must affirm the Commissioner's finding of no disability. The Court therefore does not reach Mr. Middleton's arguments regarding the appropriate scope of remand.

**I.    Mr. Middleton's Credibility**

Mr. Middleton argues that the ALJ erred in discrediting his testimony. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

In assessing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of

pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ found that Mr. Middleton's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but he also found that Mr. Middleton's statements about the severity of those symptoms were not credible. Tr. 14. The ALJ provided specific, clear, and convincing reasons for this finding.

  A. *Symptom Exaggeration*

The ALJ discounted Mr. Middleton's credibility in part because he failed to give maximum or consistent efforts during a consultative exam in August 2010. Tr. 15. Dr. Stowell, the examining physician, observed that Mr. Middleton's spinal range of motion "appeared volitionally limited during formal testing" and that "[w]hen moving around the exam room, the claimant did not exhibit the same degree of limitation." Tr. 15 (citing Tr. 252). Further, Dr. Stowell found "give-way weakness" during motor testing for both upper and lower extremities, which can be a sign of symptom magnification. *See id.* Dr. Stowell also noted several other nonphysiological findings. *See* Tr. 252. A claimant's failure "to give maximum or

consistent effort" during a physical evaluation, as well as attempts "to impede accurate testing of [the claimant's] limitations," are clear and convincing reasons for finding the claimant not credible. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (tendency to exaggerate and lack of cooperation during consultative examinations supports adverse credibility finding). Mr. Middleton argues that his depression and anxiety might account for his self-limitation during the examination, but the ALJ was entitled to draw the rational inference that Mr. Middleton's behavior reflects adversely on his credibility. *See Burch*, 400 F.3d at 679.

### B.     *Activities of Daily Living*

The ALJ also described inconsistencies between Mr. Middleton's statements regarding his daily activities and the hearing testimony regarding the severity of Mr. Middleton's symptoms. An ALJ may draw an adverse credibility finding from inconsistencies between the alleged severity of the claimant's symptoms and his self-reported activities. *See Valentine v. Commissioner*, 574 F.3d 685, 693 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

During the hearing before the ALJ, Mr. Middleton testified that he could not sit long, could barely lift a jug of milk, could only walk for 10 to 15 minutes before needing a rest, relied on Vicodin three times a day to alleviate pain, and that his hand tremors were aggravated by stress. Tr. 13-14. In comparison, the ALJ noted that Mr. Middleton previously reported using the computer; helping with light cleaning, mowing the lawn, doing laundry, and preparing meals; going shopping once or twice a week for an hour or more at a time; driving a car; and attending church meetings twice a week. Tr. 15-16. Through 2008, Mr. Middleton made jewelry, which is

"work activity that included grinding, sanding and polishing stones." Tr. 16. In May 2009, Mr. Middleton stated that he could not walk one block without his pain getting worse and that it hurt him to walk more than three steps (Tr. 163), but in February 2009, he told his doctor that his back was "feeling much better" and that he was "[e]xercising [by] walking 30 minutes per day" (Tr. 188). *See* Tr. 16. The ALJ also noted that Mr. Middleton is a caregiver for his mother, although he is helped by his wife and daughter. *See* Tr. 12. The ALJ found that "[s]uch a range of activities adds further doubt [to] the claimant's allegations of limiting symptoms." *Id.*

Mr. Middleton challenges the ALJ's interpretation of this evidence. Because the ALJ's interpretation of the evidence is rational, however, this Court must accept it. *See, e.g.*, *Burch*, 400 F.3d at 680-81. Mr. Middleton also argues that his daily activities are consistent with the ability to perform sedentary work, which may be sufficient to find him disabled under the "grids." Daily activities can be relevant to credibility determinations for two reasons: because the claimant's activities meet the threshold for transferable work skills, or because the claimant's activities contradict his other testimony. *See Orn*, 495 F.3d at 639. Mr. Middleton's argument addresses the former, but the ALJ relied on the latter.

    C.    *Medical Evidence*

The ALJ also found that the medical evidence did not support Mr. Middleton's statements regarding the severity and persistence of his symptoms. The ALJ noted that Mr. Middleton presented minimal and sporadic complaints during the first two years of his alleged disability and that his treating physician at the time, Galen Griffin, M.D., did not find any impairments. Tr. 14. Although it is not required "that a medical condition be mentioned in every report [in order] to conclude that a physician's opinion is supported by the record," *Orn*, 495

OPINION AND ORDER, Page 10

F.3d at 635, the record as a whole supports the ALJ's finding that the lack of consistent presentation of symptoms to Mr. Middleton's doctors undermines Mr. Middleton's credibility as to the severity of those symptoms.

Although Dr. Nosce stated that Mr. Middleton had some decreased ranges of motions, she also found no strength deficits; further, she described the x-ray of Mr. Middleton's foot as unremarkable and the x-ray of his spine as showing only "mild degenerative changes" that "doesn't [sic] appear severe." Tr. 14, 220. The ALJ found that such sporadic and minimal medical evidence "is inconsistent with allegations of significantly limiting symptoms." Tr. 15. Mr. Middleton argues that it was error to discount the positive findings that Dr. Nosce did make. The ALJ took those positive findings into account, however, and the ALJ's conclusion that those findings do not support the severity of symptoms alleged by Mr. Middleton is a rational interpretation of the record to which the Court must defer.

The ALJ also noted that "[d]espite the claimant's contention of recurring and worsening pain" since his alleged onset date in February 2007, he did not seek *any* treatment between March 2007 and January 2009, or between August 2009 and July 2010. *Id.*; *see also Orn*, 495 F.3d at 638 ("[I]f a claimant complains about disabling pain but fails to seek treatment … an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). The ALJ acknowledged that "financial constraints may have impacted [Mr. Middleton's] ability to obtain medical treatment to some extent." Tr. 15; *see Orn*, 495 F.3d at 638 (claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding"); *Smolen*, 80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not [seeking treatment], her symptom testimony cannot be rejected for not doing

OPINION AND ORDER, Page 11

so."). Although the record indicates that Mr. Middleton did not have health insurance and could not afford costly diagnostic tests, the record does not establish that Mr. Middleton lacked the means to pay for routine visits or for any other affordable means to treat what he alleges was debilitating pain. It was thus rational for the ALJ to conclude that "one would still expect to find some degree of effort to alleviate symptoms if they were as limiting as alleged." Tr. 15; *see also Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

      *D.*    *Summary*

The ALJ provided several clear and convincing reasons for finding Mr. Middleton's statements regarding the severity of his symptoms to be not credible. Even if one of these reasons were in error, any such error would be harmless because the remaining reasons, and thus the ALJ's ultimate credibility determination, were adequately supported by substantial evidence. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**II.**    **Lay Testimony**

Mr. Middleton argues that the ALJ did not properly consider the lay witness testimony of his wife, his sons and daughter-in-law, and two neighbors. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); *see also, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ must provide germane reasons for rejecting lay testimony, but he is not required to address each witness "on an individualized, witness-by-witness basis," and he may reject lay testimony predicated upon reports of a claimant that have been properly found not credible. *Molina*, 674 F.3d at 1114.[1]

---

[1] Mr. Middleton argues that the ALJ must "tie the reasoning of [his] credibility

OPINION AND ORDER, Page 12

The ALJ described the testimony of the lay witnesses and acknowledged that their accounts "may reflect personal observations to some degree." Tr. 17. He gave them less weight, however, because of the lack of corroborating objective medical evidence, the significant treatment gaps, and the range of daily activities reported by Mr. Middleton. *Id.* These are adequately specific reasons for rejecting lay witness statements. *See Carmickle*, 533 F.3d at 1164 (ALJ may discount lay testimony that conflicts with claimant's daily activities); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ may discount lay testimony that conflicts with medical evidence).

## III.   Step Two: Severe Impairment or Combination of Impairments

The ALJ found that Mr. Middleton suffers from "medically determinable impairments," but after evaluating the "intensity, persistence, and limiting effects" of Mr. Middleton's symptoms, he found that they did not significantly limit Mr. Middleton's ability to perform basic work activities. Tr. 13. The ALJ therefore found that Mr. Middleton did not have a severe impairment and was not disabled. Tr. 18. Mr. Middleton argues this was error.

### A.   The Inquiry at Step Two

Step Two "is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "An impairment or combination of impairments may be found 'not severe *only if*

---

determinations to the particular witnesses whose testimony [he] rejects." *Valentine*, 574 F.3d at 694. In the passage cited by Mr. Middleton, the *Valentine* court was referring to the requirement that an ALJ provide specific reasons for discrediting a spouse's testimony beyond assuming that a spouse is an interested party. *Valentine* does not require an ALJ to specify how each germane reason provided relates to each lay witness when, as here, all of the germane reasons provided by the ALJ relate to all of the lay witnesses. Indeed, the *Molina* court cited to *Valentine* when holding that "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." 674 F.3d at 1114.

OPINION AND ORDER, Page 13

the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290 (emphasis added by *Webb*)). Basic work activities include such physical acts as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," as well as other mental and social capacities. 20 C.F.R. § 404.1521(b).

An ALJ may find that a claimant does not satisfy the Step Two inquiry only if the lack of a medically severe impairment or combination of impairments is "clearly established by medical evidence." *Webb*, 433 F.3d at 687 (quoting S.S.R. 85-28). The Court therefore must determine whether there is substantial evidence to support the ALJ's finding that the medical evidence clearly established that Mr. Middleton did not have a severe impairment or combination of impairments. *Id.*

### B.  *Medical Opinions*

In reviewing the medical evidence, the ALJ gave significant weight to the opinions of four reviewing (non-examining) physicians based on the consistency of their opinions with the objective medical evidence and Mr. Middleton's own description of his daily activities. In contrast, the ALJ discounted the opinions of Dr. Nosce, a treating physician, and Dr. Stowell, an examining physician. Mr. Middleton challenges the ALJ's treatment of these two medical opinions.

#### 1.  Medical Opinion Evidence

The Ninth Circuit distinguishes among the opinions of three types of physicians:  treating physicians, examining physicians, and non-examining physicians.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the examining physician's opinion. *Lester,* 81 F.3d at 830-31. Specific, legitimate reasons for rejecting a physician's opinion include its reliance on a claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti*, 533 F.3d at 1040-41.

The opinion of a non-examining physician is not, by itself, substantial evidence that justifies rejecting the opinion of a treating or an examining physician. *Lester*, 81 F.3d at 831. It may support such a rejection, however, when considered with other evidence. *See id.* The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164.

      2.    <u>Dr. Nosce</u>

Dr. Nosce opined in August 2010 that Mr. Middleton's osteoarthritis "has gotten to the

OPINION AND ORDER, Page 15

point that pain and limitation of movement and requirement for pain medication … limits him from being able to work a full-time … job." Tr. 256. She further stated, "he is limited from light-duty, fine motor type work due to his essential tremor." *Id.* She assessed limitations on Mr. Middleton's ability to sit, stand, walk, and lift more than 10 pounds. Tr. 233.

The ALJ did not find this assessment to be persuasive in light of Dr. Nosce's own records. Tr. 15. Regarding the hand tremor, the ALJ noted the cursory references to the tremor in the treatment records, as well as statements that the tremor was being managed adequately with medication. *Id.* Mr. Middleton points to the treatment notes in which the hand tremor was mentioned, but the ALJ's analysis took those notes into account and found them to be inadequate to support the significant limitations assessed by Dr. Nosce. Mr. Middleton also argues that Dr. Stowell noted the hand tremor during his examination, but that examination occurred after Dr. Nosce made her assessment and thus could not form the basis of it.[2]

The ALJ also summarized the minimal objective medical findings of physical limitations in Dr. Nosce's treatment records. *See* Tr. 14-15. Incongruity between a physician's assessment and the treatment records provides is a legitimate reason for rejecting a treating physician's opinion. *Tommasetti*, 533 F.3d at 1041. Mr. Middleton disputes the ALJ's characterization of the record. He is correct that some x-rays show mild osteoarthritic changes, but both Dr. Griffin and Dr. Nosce concurred that these changes were minor. Tr. 188 (x-ray of hips is "pretty much unremarkable, though there may be some very, very mild osteoarthritic changes"); Tr. 242. Mr. Middleton also cites to Dr. Nosce's reference to "almost a trigger point type of pain" and

---

[2] Dr. Stowell also noted that "[l]imitations in handling object[]s would be based on the examinee's subjective report of a tremor, which was not observed much during my examination today." Tr. 253. Given the ALJ's credibility determination, the ALJ may discount Dr. Stowell's opinion regarding any limitations due to hand tremors. *See Tommasetti*, 533 F.3d at 1041.

decreased sensation in Mr. Middleton's calf, Tr. 221, but the treatment records do not indicate whether those findings were based on Dr. Nosce's objective tests or on Mr. Middleton's discredited subjective complaints. *See Tommasetti*, 533 F.3d at 1041 (an adverse credibility finding supports the rejection of a physician's opinion that is based primarily on the claimant's subjective complaints).The ALJ further noted that Dr. Nosce's assessment conflicts with the range of daily activities reported by Mr. Middleton. *See* Tr. 16-17. In sum, the ALJ provided clear, specific, and convincing reasons for giving less weight to the assessment of Dr. Nosce.

        3.     <u>Dr. Stowell</u>

The ALJ also gave little weight to Dr. Stowell's opinion because Mr. Middleton's performance during the examination "puts his efforts into question." Tr. 16. Mr. Middleton argues that Dr. Stowell took those nonphysiological findings into account when opining that Mr. Middleton is limited in his ability to stand, walk, sit, and lift. That may be a reasonable reading of Dr. Stowell's opinion, but so is the ALJ's conclusion that the entirety of Dr. Stowell's examination was undermined by Mr. Middleton's lack of cooperation. *See Thomas*, 278 F.3d at 958 (ALJ did not err in reasoning that a one-hour physical capacity evaluation that relies primarily on subjective information cannot produce valid results if the claimant exaggerates his symptoms); *Tonapetyan*, 242 F.3d at 1149 (ALJ may disregard opinion based "on testing within [the claimant's] control" when the claimant had been discredited). The Court must defer to the ALJ's permissible interpretation of the evidence.

    *C.*    *Summary*

The ALJ provided specific and legitimate reasons for giving less weight to Dr. Stowell's evaluation and Dr. Nosce's opinion. The remaining medical evidence consisted of Dr. Griffin's

and Dr. Nosce's treatment notes, Mr. Middleton's x-rays, and the opinions of four reviewing physicians. From this record, there is substantial evidence to support the ALJ's finding that the medical evidence clearly established that Mr. Middleton did not have any medically severe impairment or combination of impairments.

## IV.    ALJ's Obligation to Develop Record

Finally, Mr. Middleton argues that the ALJ had a duty to develop the record in two regards. First, Mr. Middleton argues that the ALJ should have ordered a consultative psychological examination because there is no psychological assessment in the record. Second, he argues that the ALJ should have acted on Dr. Stowell's recommendation for further workup and imaging studies to exclude other possible disorders.

The ALJ has a duty to develop the record when there is ambiguous evidence or the ALJ finds that the record is inadequate to allow for proper evaluation. *Tonapetyan*, 242 F.3d at 1150. This duty can include subpoenaing the claimant's physicians or submitting questions to them, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.*; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ may order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). An ALJ does not have a duty to request more information from physicians, however, if it appears that substantially all of their medical records were before the ALJ and "[t]here was nothing unclear or ambiguous about what they said." *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011).

Regarding Mr. Middleton's psychological impairments, the ALJ did not find the evidence

to be inconsistent, ambiguous, or inadequate to allow for proper evaluation. The ALJ relied on the opinions of two reviewing physicians, both of whom concluded that Mr. Middleton's depression and anxiety were not severe for Step Two purposes. Tr. 17. The ALJ further noted that these opinions were consistent with the other evidence in the record: Mr. Middleton's "treatment records largely only show cursory mention of depression and anxiety with reports of improvement through medication management," and his "report of activities strongly indicate that he has not had significant mental symptoms." *Id.* In this regard, the ALJ particularly noted Mr. Middleton's social activities; his church attendance and door-to-door ministry; his ability to engage in self-care, house work, and care of another family member; and his jewelry-making business and hobby. Tr. 17-18. Mr. Middleton points to no evidence in the record that would contradict the conclusion drawn from that evidence that his depression and anxiety were mild limitations adequately controlled by medications. Given this record, the ALJ was not required to order a consultative examination.

As for Dr. Stowell's recommendation, the ALJ did not find the evidence regarding Mr. Middleton's physical impairments to be ambiguous or inconclusive. The ALJ resolved the apparent discrepancy between Dr. Stowell's opinion and the treatment notes of Dr. Griffin and Dr. Nosce, as well as the opinions of the reviewing physicians, by determining that Dr. Stowell's opinion was tainted by Mr. Middleton's discredited subjective claims and his lack of full cooperation during the examination. Further, contrary to Mr. Middleton's argument before this Court, the issue before the ALJ was not the *existence* of a physical impairment, but whether the impairments already identified by three different doctors could satisfy the de minimis impact standard of Step Two. The ALJ was not required to order new consultations, at public expense,

OPINION AND ORDER, Page 19

to identify additional possible limitations based solely on an examination in which the claimant appears to have exaggerated his symptoms.

## CONCLUSION

The ALJ provided legally sufficient reasons for discrediting Mr. Middleton's testimony, discounting the testimony of lay witnesses, discounting the opinions of Dr. Nosce and Dr. Stowell, and finding Mr. Middleton's impairments to be not severe at Step Two of the sequential analysis. The ALJ also did not abdicate his duty to develop the record. Because the Commissioner's decision that Mr. Middleton is not disabled is supported by substantial evidence in the record, that decision is AFFIRMED.

DATED this 8th day of April, 2013.

/s/  Michael H. Simon\
Michael H. Simon\
United States District Judge